Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (Bar No. 281819)
rvalentine@galipolaw.com
LAW OFFICES OF DALE K. GALIPO
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333 / Fax: (818) 347-4118

Sharon J. Brunner, Esq. (Bar No. 229931)
sharonjbrunner@yahoo.com
LAW OFFICE OF SHARON J. BRUNNER
14393 Park Ave., Suite 100
Victorville, CA 92392
Tel: (760) 243-9997 / Fax: (760) 843-8155

James S. Terrell, Esq. (Bar No. 170409)
LAW OFFICE OF JAMES TERRELL
jim@talktoterrell.com
15411 Anacapa Rd.
Victorville, CA 92392
Tel: (760) 951-5850 / Fax: (760) 952-1085

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS HELGUERA CHAIREZ,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF SAN BERNARDINO, TYLER JENKINS, STEVEN ARABIA, ESQUEMON HILL and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 5:25-cv-01468<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)<br>2. Unreasonable Search and Seizure—Denial of Medical Care (42 U.S.C. § 1983)<br>3. Municipal Liability – Inadequate Training (42 U.S.C. § 1983)<br>4. Municipal Liability – Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983)<br>5. Battery<br>6. Negligence<br>7. Violation of Cal. Civil Code § 52.1<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff LUIS HELGUERA CHAIREZ, for his Complaint against Defendants CITY OF SAN BERNARDINO, TYLER JENKINS, STEVEN ARABIA, ESQUEMON HILL, and DOES 1-10, inclusive, and alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff asserts claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth Amendment of the United States Constitution.  This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

2.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## INTRODUCTION

3.      This civil rights and state tort action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the uses of excessive and unreasonable force against LUIS HELGUERA CHAIREZ on December 12, 2023.

4.      CHAIREZ suffered serious bodily injury and mental and emotional distress, pain and suffering relating to the physical injuries as a direct and proximate result of the actions and inactions of Defendants City of San Bernardino ("CITY"), TYLER JENKINS, STEVEN ARABIA, ESQUEMON HILL, and DOES 1-10, inclusive.  Defendants CITY, JENKINS, ARABIA, HILL, and DOES 1-10, inclusive, are directly liable for CHAIREZ'S injuries under federal and state law,

1  including pursuant to 42 U.S.C. § 1983.  Defendant CITY is also vicariously liable

2  for the acts and omissions of Defendants JENKINS, ARABIA, HILL, and DOES 1-

3  10, inclusive, pursuant to Cal. Govt. Code §§ 820 and 815(a).

4       5.    Defendants JENKINS, ARABIA, HILL, and DOES 1-8, inclusive,

5  caused various injuries herein directly, or by integrally participating or failing to

6  intervene in the incident, and by engaging in other acts and/or omissions around the

7  time of the incident.  Specifically, JENKINS shot CHAIREZ, HILL deployed a

8  Taser against him, and ARABIA repeatedly struck CHAIREZ with a police baton.

9       6.    Defendants CITY and DOES 9-10, inclusive, also caused various

10 injuries and are liable under federal law and under the principles set forth in *Monell*

11 *v. Department of Social Services*, 436 U.S. 658 (1978).

12      7.    CHAIREZ seeks compensatory damages from Defendants for violating

13 various rights under the United States Constitution and state law in connection with

14 the use of excessive and unreasonable force. CHAIREZ also seeks punitive damages

15 against the individual defendants.

16                              **PARTIES**

17      8.    At all relevant times, Plaintiff LUIS HELGUERA CHAIREZ

18 ("CHAIREZ") was an individual residing in San Bernardino, California. CHAIREZ

19 sues in his individual capacity. CHAIREZ seeks compensatory and punitive

20 damages under federal and state law.

21      9.    At all relevant times, Defendant CITY OF SAN BERNARDINO

22 ("CITY") is and was a municipal corporation existing under the laws of the State of

23 California.  CITY is a chartered subdivision of the State of California with the

24 capacity to be sued.  CITY is responsible for the actions, omissions, policies,

25 procedures, practices, and customs of its various agents and agencies, including the

26 City of San Bernardino Police Department ("SBPD") and its agents and employees.

27 At all relevant times, Defendant CITY was responsible for assuring that the actions,

28 omissions, policies, procedures, practices, and customs of the SBPD and its

1   employees and agents complied with the laws of the United States and of the State

2   of California.  At all relevant times, CITY was the employer of Defendants TYLER

3   JENKINS, STEVEN ARABIA, ESQUEMON HILL, and DOES 1-10.

4          10.    Defendant TYLER JENKINS ("JENKINS") is and was a police officer

5   working for the SBPD at all relevant times. At all relevant times, JENKINS was

6   acting under color of state law and within the course and scope of his duties as a

7   police officer for the SBPD. JENKINS was acting with the complete authority and

8   ratification of his principal, Defendant CITY, at all relevant times. JENKINS fired

9   shots against CHAIREZ.

10         11.    Defendant STEVEN ARABIA ("ARABIA") is and was a police officer

11  working for the SBPD at all relevant times. At all relevant times, ARABIA, was

12  acting under color of state law and within the course and scope of his duties as a

13  police officer for the SBPD. ARABIA was acting within the complete authority and

14  ratification of his principal, Defendant CITY, at all relevant times. ARABIA used

15  his baton against CHAIREZ.

16         12.    Defendant ESQUEMON HILL ("HILL") is and was a police officer

17  working for the SBPD at all relevant times. At all relevant times, HILL, was acting

18  under color of state law and within the course and scope of their duties as a police

19  officer for the SBPD. HILL was acting within the complete authority and

20  ratification of his principal, Defendant CITY, at all relevant times. HILL deployed

21  his taser against CHAIREZ.

22         13.    Defendants DOES 1-8 ("DOE OFFICERS") are, and were at the time

23  of this incident, police officers working for the SBPD.  At all relevant times, DOE

24  OFFICERS were acting under color of state law and within the course and scope of

25  their duties as police officers for the SBPD.  At all relevant times, DOE OFFICERS

26  were acting with the complete authority and ratification of their principal, Defendant

27  CITY.

28

-3-
COMPLAINT FOR DAMAGES

14.    Defendants DOES 9-10 are, and were at the time of this incident, managerial, supervisorial, and policymaking employees of the SBPD, who were acting under color of law within the course and scope of their duties as managerial, supervisorial, and policymaking employees for the SBPD.  At all relevant times, DOES 9-10 were acting with the complete authority and ratification of their principal, Defendant CITY.

15.    On information and belief, JENKINS, ARABIA, HILL, and DOES 1-10 were at all relevant times residents of the County of San Bernardino.

16.    In doing the acts and failing and omitting to act as hereinafter described, Defendants JENKINS, ARABIA, HILL, and DOE OFFICERS were acting on the implied and actual permission and consent of Defendants DOES 9-10 and the CITY.

17.    The true names and capacities, whether individual, corporate, association or otherwise of Defendants DOES 1-10, inclusive, are unknown to CHAIREZ, who otherwise sues these Defendants by such fictitious names. CHAIREZ will seek leave to amend this complaint to show the true names and capacity of these Defendants when they have been ascertained.  Each of the fictitiously named Defendants are responsible in some manner for the conduct or liabilities alleged herein.

18.    At all times mentioned herein, each and every Defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every defendant.

19.    All of the acts complained of herein by CHAIREZ against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity.  Moreover, Defendants and their agents ratified all of the acts complained of herein.

COMPLAINT FOR DAMAGES

20.     All Defendants who are natural persons, including JENKINS, ARABIA, HILL, and DOES 1-10, inclusive, are sued individually and/or in his/her capacity as officers, deputies, investigators, sergeants, captains, commanders, supervisors, and/ or civilian employees, agents, policy makers, and representatives of the CITY and the SBPD.

21.     Defendant CITY is liable for the nonfeasance and malfeasance of JENKINS, ARABIA, HILL, and DOES 1-10, inclusive, for the state law claims herein pursuant to Cal. Govt. Code §§ 815.2(a), 815.6.  Further, JENKINS, ARABIA, HILL, and DOES 1-10, inclusive, are liable for their nonfeasance and malfeasance pursuant to Cal. Govt. Code § 820(a).

22.     On or around May 29, 2024, CHAIREZ filed comprehensive and timely claims for damages with the City of San Bernardino pursuant to applicable sections of the California Government Code.  The claims were rejected by operation of law.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

23.     CHAIREZ repeats and re-alleges each and every allegation in the prior paragraphs of this Complaint with the same force and effect as if fully set forth herein.

24.     On December 22, 2023, at approximately 6:00 p.m., JENKINS responded to a call regarding a reported violation of a criminal protective order. ARABIA and HILL assisted JENKINS with the call and located CHAIREZ on Ironwood Street. ARABIA and HILL attempted a traffic stop, and a pursuit ensued. At one point, CHAIREZ stopped his vehicle, and ARABIA and HILL exited their vehicles and pointed their firearms at CHAIREZ. CHAIREZ fled. The pursuit ended when officers successfully deployed a spike strip that stopped CHAIREZ.

25.     Thereinafter, CHAIREZ got out of his vehicle and ran into a wooded area, where JENKINS, ARABIA, and HILL pursued him on foot. At this time, and at all relevant times thereafter, CHAIREZ never verbally threatened any person or

SBPD officer, was not a threat to any person or SBPD officer, and was not carrying a gun, knife, or any other weapon.

26.    HILL then deployed a Taser against CHAIREZ. At the time of the Taser deployment, CHAIREZ posed no threat to the safety of any person, including not posing any threat to the SBPD Officers. The Taser deployment was unnecessary, negligent, excessive, unreasonable, inappropriate, contrary to basic police training, and unjustified.

27.    Thereafter, ARABIA approached CHAIREZ and struck him twice with his baton. At the time of the use of the baton, CHAIREZ posed no threat of safety to any person, including not posing any threat to the SBPD Officers. The use of the baton was unnecessary, negligent, excessive, unreasonable, inappropriate, contrary to basic police training, and unjustified.

28.    Thereafter, JENKINS fired multiple lethal shots at CHAIREZ, striking and seriously injuring him. At the time of all shots, CHAIREZ posed no immediate threat of death or serious bodily injury to any person. Additionally, there were reasonable alternative measures available to shooting. Therefore, the shooting was negligent, excessive, unreasonable, inappropriate, contrary to basic police training, and unjustified.

29.    On information and belief, JENKINS failed to give CHAIREZ a warning that deadly force would be used prior to shooting. The shooting violated JENKINS' training and standard police officer training with respect to the use of deadly force.

30.    After being shot with rounds from a lethal firearm, CHAIREZ was immobile, bleeding profusely, and in obvious and critical need of emergency medical care and treatment. Defendants did not timely summon medical care or permit medical personnel to treat CHAIREZ. The delay of medical care to CHAIREZ caused CHAIREZ extreme physical and emotional pain and suffering, and was a contributing cause of CHAIREZ'S serious injuries.

31.    JENKINS, ARABIA, HILL, and DOES 1-8 were not responding to a violent crime, they did not have any information that anyone was harmed, they did not have any information that CHAIREZ was armed, and CHAIREZ was in fact unarmed.

32.    As a result of the uses of force and restraint against CHAIREZ, CHAIREZ sustained life threatening injuries, financial loss in the form of past and future loss of earnings and past and future medical expenses, in addition to suffering pain, emotional and mental distress, humiliation, and disfigurement.

33.    Each of JENKINS, ARABIA, HILL, and DOES 1-8 integrally participated in and failed to intervene in the constitutional violations, and each of JENKINS, ARABIA, HILL, and DOES 1-8 had a realistic opportunity and a responsibility to intervene.

34.    CHAIREZ seeks damages for his past and future pain and suffering including: impairment, disfigurement, emotional distress related to his injuries, mental anguish, embarrassment, loss of quality of life, and any medical expenses under these claims.  CHAIREZ also seeks reasonable attorneys' fees and costs.

COMPLAINT FOR DAMAGES

# FIRST CLAIM FOR RELIEF

## Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)

### (Against Defendants JENKINS, ARABIA, HILL, and DOE OFFICERS)

35.    CHAIREZ repeats and re-alleges each and every allegation in the prior paragraphs of this Complaint with the same force and effect as if fully set forth herein.

36.    The uses of force against CHAIREZ, including HILL'S use of the Taser, ARABIA'S use of the police baton, and JENKINS' use of his lethal firearm, deprived CHAIREZ of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

37.    The uses of force by JENKINS, ARABIA, and HILL, including the Taser deployment, the baton strikes, and lethal shots, were excessive, unreasonable, unjustified, inappropriate, and contrary to basic police training. CHAIREZ posed no threat to the safety of any during each of the uses of force against him.  Specifically, CHAIREZ posed no immediate threat of death or serious bodily injury at the time of the lethal shots. The use of less-lethal force by ARABIA and HILL prior to JENKINS' use of deadly force escalated the situation. CHAIREZ was unarmed during this incident, and he made no verbal threats.

38.    On information and belief, JENKINS, ARABIA, and HILL failed to give CHAIREZ a verbal warning before using force against CHAIREZ, even though it would have been feasible to do so. Specifically, officers are trained that prior to using deadly force against a person, officers shall give a verbal warning that deadly force will be used, when feasible.

39.    As a result of their misconduct, Defendants JENKINS, ARABIA, HILL, and DOE OFFICERS are liable for CHAIREZ'S injuries, either because they were integral participants in the uses of excessive force, or because they failed to

-8-

intervene to prevent these violations. JENKINS, ARABIA, and HILL each had a responsibility and realistic opportunity to intervene in the uses of force.

40.     The conduct of Defendants JENKINS, ARABIA, and HILL was willful, wanton, malicious, and done with reckless disregard for the rights and safety of CHAIREZ, and therefore warrants the imposition of exemplary and punitive damages as to Defendants JENKINS, ARABIA, and HILL.

41.     As a result of the foregoing, CHAIREZ suffered serious physical injuries, great physical pain and emotional distress, and also suffered a loss of enjoyment of life and loss of earning capacity.  CHAIREZ seeks damages for his past and future pain and suffering, including impairment, disfigurement, emotional distress, mental anguish, embarrassment, loss of quality of life. CHAIREZ also seeks past and future medical expenses related to his injuries and past and future lost earnings.  CHAIREZ also seeks costs and attorney's fees under this claim.

## SECOND CLAIM FOR RELIEF

**Unreasonable Search and Seizure—Denial of Medical Care (42 U.S.C. § 1983)**

(Against Defendants JENKINS, ARABIA, HILL, and DOE OFFICERS)

42.     CHAIREZ repeats and re-alleges each and every allegation in the prior paragraphs of this Complaint with the same force and effect as if fully set forth herein.

43.     After being struck by the Taser beaten multiple times with police batons, and shot with a lethal firearm, CHAIREZ was immobile, bleeding profusely, and in obvious and critical need of emergency medical care and treatment. Defendants did not timely summon medical care or permit medical personnel to treat CHAIREZ.  The delay of medical care to CHAIREZ caused CHAIREZ extreme physical and emotional pain and suffering and was a contributing cause of CHAIREZ'S serious physical injuries.

44.    The denial of medical care by the defendant officers deprived CHAIREZ of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

45.    Defendants JENKINS, ARABIA, HILL, and DOE OFFICERS knew that failure to provide timely medical treatment to CHAIREZ could result in further significant injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, causing CHAIREZ great bodily harm and emotional distress.

46.    The conduct of JENKINS, ARABIA, and HILL was willful, wanton, malicious, and done with reckless disregard for the rights and safety of CHAIREZ and therefore warrants the imposition of exemplary and punitive damages as to Defendants JENKINS, ARABIA, and HILL.

47.    As a result of their misconduct, Defendants JENKINS, ARABIA, HILL, and DOE OFFICERS are liable for CHAIREZ'S injuries, either because they were integral participants in the denial of medical care, or because they failed to intervene to prevent these violations. JENKINS, ARABIA, HILL, and DOE OFFICERS had a realistic opportunity and a responsibility to intervene.

48.    As a result of the foregoing, CHAIREZ suffered serious physical injuries, great physical pain and emotional distress, and also suffered a loss of enjoyment of life and loss of earning capacity.  CHAIREZ seeks damages for his past and future pain and suffering including impairment, disfigurement, emotional distress, mental anguish, embarrassment, loss of quality of life; and any past and future medical expenses related to his injuries.  CHAIREZ also seeks costs and attorney's fees under this claim.

**THIRD CLAIM FOR RELIEF**

**Municipal Liability – Failure to Train (42 U.S.C. § 1983)**

(Against Defendants CITY and DOES 9-10)

49.     CHAIREZ repeats and re-alleges each and every allegation in the prior paragraphs of this Complaint with the same force and effect as if fully set forth herein.

50.     Defendants JENKINS, ARABIA, and HILL acted under color of law.

51.     The acts of Defendants JENKINS, ARABIA, and HILL deprived CHAIREZ of his rights under the United States Constitution.

52.     The training policies of Defendant CITY was not adequate to train its police officers to handle the usual and recurring situations with which they must deal. This includes training with respect to giving appropriate warnings and commands, the use of less-lethal and lethal force, and de-escalation techniques.

53.     Defendant CITY was deliberately indifferent to the obvious consequences of its failure to train its police officers adequately.

54.     The failure of Defendant CITY to provide adequate training caused the deprivation of CHAIREZ'S rights by Defendants JENKINS, ARABIA, and HILL; that is, the supervisory and municipal defendants' failures to train is so closely related to the deprivation of CHAIREZ'S rights as to be the moving force that caused the ultimate injury.

55.     The following are only a few examples of cases where the CITY failed to train its officers, and the involved officers were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicates that the CITY failed to adequately train its officers, more specifically the failure to train with regard to the use of force:

              a.     In *Castaneda v. City of San Bernardino*, Case No. 5:17-cv-01928, plaintiffs alleged that the involved SBPD officers used excessive and unreasonable force when they stopped decedent without reasonable suspicion

-11-

or probable cause and shot decedent when he was not an immediate threat of death or serious bodily injury. Upon information and belief, the involved officers were never disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with use of unreasonable force.

b.     In *Wade v. City of San Bernardino*, Case No. CV-11-09831 GHK (SPx), plaintiff alleged that the involved SBPD officer used excessive and unreasonable force when they shot the unarmed plaintiff multiple times, when he did not pose an immediate risk of death or serious bodily injury. The involved officer also shot six individuals within a sixteen-month period without any retraining or discipline. Upon information and belief, the involved officer was never disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with use of unreasonable force.

c.     In *Dockery v. City of San Bernardino*, Case No. 5:20-CV-1189, plaintiff alleged that the involved SBPD officers used excessive and unreasonable force when they shot the unarmed plaintiff in the back, when he did not pose an immediate risk of death or serious bodily injury. Upon information and belief, the involved officers were never disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with use of unreasonable force.

d.     In *Trejo v. City of San Bernardino*, Case No. 5:17-cv-01928, plaintiff alleged that defendant City officers used excessive and unreasonable force when they shot the unarmed decedent who was not an immediate threat of death or serious bodily injury. Upon information and belief, the involved officers were never disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with use of unreasonable force.

e.     In *Brown v. City of San Bernardino*, Case No. CIV-DS-1007751, plaintiff alleged that he suffered a battery and false arrest by defendant officers when they pushed him to the ground without provocation and falsely detained

-12-

1    him on a 5150 hold.  A jury found in favor of plaintiff.  Upon information and

2    belief, the involved officers were never disciplined, reprimanded, retrained,

3    suspended, or otherwise penalized in connection with use of unreasonable force

4    and seizure.

5         f.    In *King v. City of San Bernardino*, Case No. 2:09-cv-01339-DMG-

6    PJW, plaintiff alleged that defendant officer used excessive deadly force when

7    he shot plaintiff nine times as plaintiff ran away with visibly empty hands and

8    having committed no crime.  A unanimous jury found in favor of plaintiff.

9    Upon information and belief, the involved officer was never disciplined,

10   reprimanded, retrained, suspended, or otherwise penalized in connection with

11   use of unreasonable force.

12        g.    In *Nash v. City of San Bernardino*, Case No. CV-09-08671-

13   RGK (FFMx), plaintiff alleged that officers used excessive force when

14   they used a lethal chokehold, hogtie restraint, and placed hundreds of

15   pounds on decedent's back causing his death by restraint asphyxia.

16   Defendants claimed that the officers used reasonable force.  A unanimous

17   jury found that the force was unreasonable.  Upon information and belief,

18   the involved officers were never disciplined, reprimanded, retrained,

19   suspended, or otherwise penalized in connection with use of unreasonable

20   force.

21   56.    Accordingly, Defendants CITY and DOES 9-10 each are liable to

22   Plaintiff for compensatory damages under 42 U.S.C. § 1983.

23   57.    As a result of the foregoing, CHAIREZ suffered serious injuries, great

24   physical pain and emotional distress, and also suffered a loss of enjoyment of life

25   and loss of earning capacity.  CHAIREZ seeks damages for his past and future pain

26   and suffering including impairment, disfigurement, emotional distress, mental

27   anguish, embarrassment, loss of quality of life, and any past and future medical

28

1  expenses related to his injuries.  CHAIREZ also seeks costs and attorney's fees
2  under this claim.

### FOURTH CLAIM FOR RELIEF

**Municipal Liability – Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

(Against Defendants CITY and DOES 9-10)

58.    CHAIREZ repeats and re-alleges each and every allegation in the prior paragraphs of this Complaint with the same force and effect as if fully set forth herein.

59.    Defendants JENKINS, ARABIA, and HILL acted under color of law.

60.    Defendants JENKINS, ARABIA, and HILL acted pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendant CITY.

61.    On information and belief, Defendants JENKINS, ARABIA, and HILL were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the unlawful detention and arrest of CHAIREZ, the uses of force against CHAIREZ, the denial of medical care to CHAIREZ, or CHAIREZ'S serious physical injuries.

62.    Defendants DOES 9-10, together with other CITY policymakers and supervisors maintained, inter alia, the following unconstitutional customs, practices, and policies:

(a)    Using excessive force;

(b)    Providing inadequate training regarding the use of deadly force;

(c)    Employing and retaining as police officers individuals such as Defendants JENKINS, ARABIA, and HILL, whom Defendant CITY at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force;

(d)   Inadequately supervising, training, controlling, assigning, and disciplining CITY police officers, including JENKINS, ARABIA, and HILL, whom Defendant CITY knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

(e)   Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by CITY police officers;

(f)   Failing to adequately discipline CITY police officers, respectively, for the above-referenced categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

(g)   Announcing that unjustified shootings are "within policy," including shootings that were later determined in court to be unconstitutional;

(h)   Even where shootings are determined in court to be unconstitutional, refusing to discipline, terminate, or retrain the officers/deputies involved;

(i)   Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simply "code of silence," pursuant to which police officers do not report other officers' errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officers' wrongdoing; and

COMPLAINT FOR DAMAGES

    (j)    Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of police shootings and other uses of force.

63.    Defendants CITY and DOES 9-10, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of CHAIREZ and other individuals similarly situated.

64.    By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, CITY and DOES 9-10, acted with intentional, reckless, and callous disregard for the life of CHAIREZ and for CHAIREZ'S constitutional rights. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants CITY and DOES 9-10, were affirmatively linked to and were a significantly influential force behind the injuries of CHAIREZ.

65.    Based on information and belief, the following are examples of cases where the involved officers were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicates that the CITY routinely ratifies such behavior, fails to train its officers, and maintains a practice of allowing such behavior:

a. In *Castaneda v. City of San Bernardino*, Case No. 5:17-cv-01928, plaintiffs alleged that the involved SBPD officers used excessive and unreasonable force when they stopped decedent without reasonable suspicion or probable cause and shot decedent when he was not an immediate threat of death or serious bodily injury. Upon information and

COMPLAINT FOR DAMAGES

1   belief, the involved officers were never disciplined, reprimanded,
2   retrained, suspended, or otherwise penalized in connection with use of
3   unreasonable force.

4   b. In *Wade v. City of San Bernardino*, Case No. CV-11-09831 GHK (SPx),
5   plaintiff alleged that the involved SBPD officer used excessive and
6   unreasonable force when they shot the unarmed plaintiff multiple times
7   when he did not pose an immediate risk of death or serious bodily injury.
8   The involved officer also shot six individuals within a sixteen-month
9   period without any retraining or discipline.  Upon information and belief,
10   the involved officer was never disciplined, reprimanded, retrained,
11   suspended, or otherwise penalized in connection with use of unreasonable
12   force.

13   c. In *Dockery v. City of San Bernardino*, Case No. 5:20-CV-1189, plaintiff
14   alleged that the involved SBPD officers used excessive and unreasonable
15   force when they shot the unarmed plaintiff in the back, when he did not
16   pose an immediate risk of death or serious bodily injury.  Upon
17   information and belief, the involved officers were never disciplined,
18   reprimanded, retrained, suspended, or otherwise penalized in connection
19   with use of unreasonable force.

20   d. In *Trejo v. City of San Bernardino*, Case No. 5:17-cv-01928, plaintiff
21   alleged that defendant SBPD officers used excessive and unreasonable
22   force when they shot the unarmed decedent who was not an immediate
23   threat of death or serious bodily injury.  Upon information and belief, the
24   involved officers were never disciplined, reprimanded, retrained,
25   suspended, or otherwise penalized in connection with use of unreasonable
26   force.

27   e. In *Brown v. City of San Bernardino*, Case No. CIV-DS-1007751, plaintiff
28   alleged that he suffered a battery and false arrest by defendant officers

-17-

when they pushed him to the ground without provocation and falsely detained him on a 5150 hold. A jury found in favor of plaintiff. Upon information and belief, the involved officers were never disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with use of unreasonable force and seizure.

f. In *King v. City of San Bernardino*, Case No. 2:09-cv-01339-DMG-PJW, plaintiff alleged that the defendant officer used excessive deadly force when he shot plaintiff nine times as plaintiff ran away with visibly empty hands and having committed no crime. A unanimous jury found in favor of plaintiff. Upon information and belief, the involved officers were never disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with use of unreasonable force.

g. In *Nash v. City of San Bernardino*, Case No. CV-09-08671-RGK (FFMx), plaintiff alleged that officers used excessive force when they used a lethal chokehold, hogtie restraint, and placed hundreds of pounds on decedent's back causing his death by restraint asphyxia. Defendants claimed that the officers used reasonable force. A unanimous jury found that the force was unreasonable. Upon information and belief, the involved officers were never disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with use of unreasonable force.

66. Accordingly, Defendants CITY and DOES 9-10, each are liable to CHAIREZ for compensatory damages under 42 U.S.C. § 1983.

67. As a result of the foregoing, CHAIREZ suffered serious injuries, great physical pain and emotional distress, and also suffered a loss of enjoyment of life and loss of earning capacity. CHAIREZ seeks damages for his past and future pain and suffering including impairment, disfigurement, emotional distress, mental anguish, embarrassment, loss of quality of life, and any past and future medical

1  expenses related to his injuries. CHAIREZ also seeks costs and attorney's fees

2  under this claim.

### FIFTH CLAIM FOR RELIEF

#### Battery

(Against Defendants CITY, JENKINS, ARABIA, and HILL)

68.    CHAIREZ repeats and re-alleges each and every allegation in the prior paragraphs of this Complaint with the same force and effect as if fully set forth herein.

69.    The uses of force by JENKINS, ARABIA, and HILL, including the Taser deployment, the baton strikes, and the lethal firearm, were excessive, unreasonable, unjustified, inappropriate, and contrary to basic police training. CHAIREZ posed no threat to the safety of any person during any of the uses of force.  At the time of the shooting, there was no imminent threat of death or serious bodily injury, in that CHAIREZ did not have the present ability, opportunity, or apparent intent to immediately case death or serious bodily injury. The shooting was not necessary to defend human life.

70.    JENKINS, ARABIA, and HILL failed to give CHAIREZ a verbal warning before deploying their Tasers, beating him with batons, and shooting him with lethal rounds, even though it would have been feasible to do so.  HILL and ARABIA escalated the situation when they used less-lethal force against CHAIREZ prior to the shooting.

71.    At all relevant times, JENKINS, ARABIA, and HILL were working as police officers for the City of San Bernardino Police Department and were acting within the course and scope of their duties as police officers for the CITY.

72.    Defendant CITY is vicariously liable for the wrongful acts of JENKINS, ARABIA, and HILL pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries

COMPLAINT FOR DAMAGES

1  caused by its employees within the scope of the employment if the employee's act

2  would subject him or her to liability.

3      73.    The conduct of JENKINS, ARABIA, and HILL was malicious,

4  wanton, oppressive, and accomplished with a conscious disregard for the rights of

5  CHAIREZ, entitling CHAIREZ to an award of exemplary and punitive damages as

6  to Defendants JENKINS, ARABIA, and HILL.

7      74.    As a result of the foregoing, CHAIREZ suffered serious injuries, great

8  physical pain and emotional distress, and also suffered a loss of enjoyment of life

9  and loss of earning capacity.  CHAIREZ seeks damages for his past and future pain

10  and suffering including impairment, disfigurement, emotional distress, mental

11  anguish, embarrassment, loss of quality of life; and any past and future medical

12  expenses related to his injuries.  CHAIREZ also seeks costs and attorney's fees

13  under this claim.

14

15              **SIXTH CLAIM FOR RELIEF**

16                 **Negligence**

17               (Against All Defendants )

18      75.    CHAIREZ repeats and re-alleges each and every allegation in the prior

19  paragraphs of this Complaint with the same force and effect as if fully set forth

20  herein.

21      76.    Police officers, including JENKINS, ARABIA, and HILL, have a duty

22  to use reasonable care to prevent harm or injury to others. This duty includes only

23  making lawful detentions and arrests, using appropriate tactics, giving appropriate

24  commands, giving warnings, and not using any force unless necessary.

25      77.    The uses of force by JENKINS, ARABIA, and HILL, including the

26  Taser deployment, the baton strikes, and the lethal shots, were negligent and

27  contrary to basic police training. CHAIREZ posed no threat to the safety of any

28  person during this incident, including during the uses of force.  At the time of the

COMPLAINT FOR DAMAGES

1  shooting, there was no imminent threat of death or serious bodily injury, in that
2  CHAIREZ did not have the present ability, opportunity, or apparent intent to
3  immediately case death or serious bodily injury. The shooting was not necessary to
4  defend human life.

5      78.    JENKINS, ARABIA, and HILL negligently failed to give CHAIREZ a
6  verbal warning before deploying their Tasers, striking him with batons, and firing
7  lethal shots, even though it would have been feasible to do so.  In violation of police
8  training, the officers escalated the situation when they used less-lethal force against
9  CHAIREZ prior to shooting him.

10     79.    Defendants JENKINS, ARABIA, and HILL breached their duty of
11  care.  The actions and inactions of Defendants DOE OFFICERS were negligent and
12  reckless, including but not limited to:

13         (a)    the failure to properly and adequately assess the need to use
14                force against CHAIREZ, and negligent use of force;

15         (b)    the negligent tactics and handling of the situation with
16                CHAIREZ, including pre-shooting negligence;

17         (c)    the negligent detention, negligent arrest, negligent failure to give
18                a warning prior to using force, and the negligent use of force
19                against CHAIREZ;

20         (d)    the failure to provide prompt medical care to CHAIREZ after the
21                shooting;

22         (e)    the failure to properly train and supervise employees, both
23                professional and non-professional, including JENKINS,
24                ARABIA, and HILL; and

25         (f)    the negligent communication of information during the incident.

26     80.    At all relevant times, JENKINS, ARABIA, and HILL were working as
27  police officers for the City of San Bernardino Police Department and were acting
28  within the course and scope of their duties as police officers for the CITY.

-21-
COMPLAINT FOR DAMAGES

81.     Defendant CITY is vicariously liable for the wrongful acts of JENKINS, ARABIA, HILL, and Defendants DOES 1-10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

82.     As a direct and proximate result of the foregoing, CHAIREZ suffered serious injuries, great physical pain and emotional distress, and also suffered a loss of enjoyment of life and loss of earning capacity.  CHAIREZ seeks damages for his past and future pain and suffering including impairment, disfigurement, emotional distress, mental anguish, embarrassment, loss of quality of life; and any past and future medical expenses related to his injuries.

## SEVENTH CLAIM FOR RELIEF
### (Violation of Cal. Civil Code § 52.1)
(Against all Defendants)

83.     CHAIREZ repeats and re-alleges each and every allegation in the prior paragraphs of this Complaint with the same force and effect as if fully set forth herein.

84.     California Civil Code, Section 52.1 (the Bane Act), prohibits any person from using violent acts or threatening to commit violent acts in retaliation against any person for exercising that person's constitutional rights, which can be shown by a reckless disregard for that person's civil rights.  JENKINS, ARABIA, and HILL intended to interfere with CHAIREZ'S constitutional rights, did successfully interfere with CHAIREZ'S constitutional rights, and also acted with reckless disregard for CHAIREZ'S constitutional rights.

85.     Defendants JENKINS, ARABIA, and HILL intentionally committed and attempted to commit acts of violence against CHAIREZ.

86.     On information and belief, Defendants intentionally committed the above acts to discourage CHAIREZ from exercising his civil rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights, which he was fully entitled to enjoy.

87.     On information and belief, CHAIREZ reasonably believed and understood that the violent acts committed by Defendants JENKINS, ARABIA, and HILL were intended to discourage him from exercising his constitutional rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights.

88.     The conduct of Defendants JENKINS, ARABIA, and HILL was a substantial factor in causing CHAIREZ'S harms, losses, injuries, and damages.

89.     At all relevant times, JENKINS, ARABIA, and HILL were working as police officers for the City of San Bernardino Police Department and were acting within the course and scope of their duties as police officers for the CITY.

90.     Defendant CITY is vicariously liable for the wrongful acts of JENKINS, ARABIA, HILL, and DOES 1-10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

91.     The conduct of Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for CHAIREZ'S rights, justifying an award of exemplary and punitive damages as to Defendants JENKINS, ARABIA, and HILL.

92.     As a result of the foregoing, CHAIREZ suffered serious injuries, great physical pain and emotional distress, and also suffered a loss of enjoyment of life and loss of earning capacity.  CHAIREZ seeks damages for his past and future pain and suffering including impairment, disfigurement, emotional distress, mental anguish, embarrassment, loss of quality of life; and any past and future medical

1  expenses related to his injuries. CHAIREZ also seeks attorney's fees and costs
2  under this claim pursuant to Cal. Civ. Code §52.1.
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT FOR DAMAGES

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff LUIS HELGUERA CHAIREZ requests entry of judgment in his favor and against Defendants CITY OF SAN BERNARDINO, TYLER JENKINS, STEVEN ARABIA, ESQUEMON HILL, and DOES 1-10, as follows:

        A.    For compensatory damages under federal and state law, in the amount to be proven at trial;

        B.    For punitive damages against the individual defendants in an amount to be proven at trial;

        C.    For interest;

        D.    For reasonable attorneys' fees, including litigation expenses;

        E.    For costs of suit; and

        F.    For such further other relief as the Court may deem just, proper, and appropriate.

DATED: June 12, 2025           LAW OFFICES OF DALE K. GALIPO

                      By:  *s/ Dale K. Galipo*
                            Dale K. Galipo
                            Renee V. Masongsong
                            *Attorneys for Plaintiff*

1

**<u>DEMAND FOR JURY TRIAL</u>**

2

Plaintiff hereby demands a trial by jury.

3

4

DATED: June 12, 2025                LAW OFFICES OF DALE K. GALIPO

5

6

*s/ Dale K. Galipo*

Dale K. Galipo

7

Renee V. Masongsong

8

*Attorneys for Plaintiff*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-26-

COMPLAINT FOR DAMAGES